UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| J.R.S., INC., | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 08-CV-0653-CVE-FHM |
| | ) |
| PANDUIT CORP., | ) |
| | ) |
| | ) |
|      **Defendant.** | ) |

**OPINION AND ORDER**

Now before the Court is Panduit's Motion to Dismiss for Improper Venue, or in the Alternative, Motion for More Definite Statement (Dkt. ## 14, 15). Defendant Panduit Corp. asks the Court to dismiss this case because the parties entered a contract containing a mandatory forum selection clause requiring the parties to litigate all matters related to the contract in the United States District Court for the Northern District of Illinois or the Circuit Court of Cook County, Illinois. In the alternative, Panduit requests a more definite statement of plaintiff's defamation claim.

**I.**

J.R.S. Inc. ("JRS") is a licensed electrical contractor in the state of Oklahoma and, until May 2008, was a Panduit Certified Installer ("PCI") of Panduit products.[1] Dkt. # 2, Ex. 1, at 2. JRS was accepted into the PCI program in 2006 and its application for recertification was approved in 2007

---

[1] Panduit states it "manufactures electrical parts and components and other products." Dkt. # 15, at 2. Panduit claims that it provides its certification program to "qualified installation companies who wish to become certified as an installer of Panduit products, who receive proper training and certification, and who accept Panduit's Terms and Conditions." Dkt. # 15, Ex. 1, at 1. An installer must reapply for certification each year, but Panduit reserves the right to terminate certification at any time for any reason. Id.

and 2008. Dkt. # 15, Ex. 1, at 1. JRS alleges that it bid for and was awarded a contract to install a low voltage cabling package for the Muscogee (Creek) Nation of Oklahoma's ("Creek Nation") Riverspirit Casino in Tulsa, Oklahoma. JRS claims that it reviewed the project specifications and requested bids from three distributors of structured cabling product for Panduit products. Dkt. # 2, Ex. 1, at 2. One of the distributors provided a bid using Panduit products and a separate bid using products from another manufacturer. JRS claims that it did not request a bid based on non-Panduit parts and the distributor provided this bid on its own initiative. Id. at 3. JRS compiled the bids in spreadsheet format and sent the information to the Creek Nation Oversight Committee ("the Committee"). The Committee selected the bid using non-Panduit products for the Riverspirit Casino project. JRS notified Panduit's local representative of the Committee's decision on May 12, 2008.

JRS alleges that, on May 19, 2008, it received forwarded e-mails from Panduit and other sources stating that JRS had lost its PCI certification. JRS claims that the e-mails were originally sent to the Choctaw Nation and Flintco, Inc., both of which were JRS customers, and the e-mails included derogatory statements about JRS's business practices and the quality of its workmanship. JRS alleges that it had entered contracts with Flintco to install structured cabling systems at five casinos for the Choctaw Nation, and refers to the projects individually as the McAlester Project, the Idabel Project, the Stringtown Project, the Grant Project, and the Durant Project. Flinto terminated each of these contracts and hired another contractor to install structured cabling for each of these casino projects. Id. at 4. During the same time period, the Cherokee Nation of Oklahoma ("Cherokee Nation") awarded JRS a contract to install a structured cabling system in West Siloam Springs, Oklahoma. Panduit allegedly contacted the Cherokee Nation and stated that "JRS would be losing its PCI certification and question[ed] JRS' ability to work on the Cherokee Project." Id.

The Cherokee Nation terminated its contract with JRS. JRS alleges that it received formal notification from Panduit on May 23, 2008 that its PCI certification was terminated.

JRS filed this lawsuit on October 14, 2008 in the District Court of Rogers County, Oklahoma, alleging one claim of defamation and six claims of tortious interference with contract against Panduit. In support of its defamation claim (Count One), JRS alleges that "Panduit did knowingly and recklessly make false and malicious statements alleging poor workmanship, professional impropriety and other misconduct by JRS to JRS' customers and competitors" and JRS claims that these statements constitute slander per se. Id. at 5. The claims of tortious interference with contract are based on the alleged termination of the McAlester Project (Count Two), the Idabel Project (Count Three), the Stringtown Project (Count Four), the Grant Project (Count Five), the Durant Project (Count Six), and the Cherokee Project (Count Seven) due to Panduit's improper interference with JRS's existing contractual relationships. Panduit removed the case to this Court on November 6, 2008.

Panduit filed a motion to dismiss for improper venue (Dkt. # 15) because the PCI Terms and Conditions contain a forum selection clause, which provides:

> **Governing Law.** These Terms and Conditions shall be governed by and construed in accordance with the laws of the State of Illinois, USA. All disputes arising under these Terms and Conditions and/or the PCI Program or relating thereto shall be subject to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, or the Circuit Court of Cook County, Illinois, both of which courts are located in Cook County, Illinois, USA.

Dkt. # 15, Ex. 2. In the alternative, Panduit requests a more definite statement of JRS' defamation claim because JRS's complaint does not provide sufficient notice of what defamatory statements form the basis of JRS' defamation claim. Dkt. # 14.

**II.**

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3)." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992). On a Rule 12(b)(3) motion, the Court may consider matters outside the pleadings and the Court is not required to accept the allegations of the complaint as true to the extent that the allegations of the complaint are controverted by other evidence.[2] See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundait Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008). However, the Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

### III.

Panduit argues that all of plaintiff's claims relate to Panduit's decision to terminate JRS' PCI certification, and that the forum selection clause in the PCI agreement requires JRS to file this case in the Northern District of Illinois or the Circuit Court of Cook County, Illinois. JRS responds that the forum selection clause does not apply, because JRS' tort claims do not arise under and are not related to the PCI program.

---

[2]  Although plaintiff argues that the Court should not consider evidence outside the pleadings, it makes perfect sense to do so when considering a Rule 12(b)(3) motion to dismiss based on a forum selection clause. In such cases, the plaintiff could artfully plead around a forum selection clause by omitting any reference to such an agreement in the complaint, and this would convert the forum selection clause itself into a matter outside the pleadings. This would deny a defendant the opportunity to file a motion to dismiss based on a forum selection clause, which would be contrary to the spirit of Rule 12(b)(3).

Forum selection clauses are presumed to be valid and the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992). The party resisting enforcement of a forum selection provision "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953 (10th Cir. 1992). The Tenth Circuit has found that forum selection clauses fall into two general categories - mandatory or permissive. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997). A mandatory selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum." Id. (quoting Thompson v. Founders Group Int'l, 886 P.2d 904, 910 (Kan. Ct. App. 1994). A permissive forum selection clause permits suit to brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. SKKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 581-82 (10th Cir. 1997).

In this case, Panduit has not made a prima facie showing that the forum selection clause applies to JRS' claims and the Court will not impose a heavy burden on JRS to resist enforcement of the forum selection clause. JRS is not claiming that Panduit improperly terminated its PCI certification nor is JRS seeking reinstatement to the PCI program. Instead, JRS claims that Panduit made a series of defamatory statements to JRS' customers and these actions harmed JRS' right to perform existing contracts. The contracts at issue are between JRS and its customers, not the PCI agreement itself, and the PCI program bears only a tangential relationship to JRS' claims. The

complaint does not allege that Flintco or the Cherokee Nation terminated any of the contracts underlying JRS' claims of tortious interference with contract because JRS lost its PCI certification, nor would this be a reasonable inference from the parties' arguments or the evidence produced by Panduit. Even if the Court were to find that Panduit properly terminated JRS' PCI certification, this would not resolve JRS' tort claims against Panduit. Consequently, Panduit has not shown that the parties agreed to litigate the subject claims in the specified fora, and the forum selection clause does not apply.

Panduit argues that JRS has artfully pled its claims as torts, but underlying these claims is an unstated breach of contract claim. Panduit is correct that a forum selection clause may be broad enough to encompass contract and tort claims. See Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 223-23 (5th Cir. 1998); Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 668, 693 (8th Cir. 1997); T.D. Williamson, Inc. v. Plant Services, Inc., 2006 WL 3085608 (N.D. Okla. Oct. 27, 2006). The forum selection clause at issue may govern tort claims "arising under" or "related to" the PCI program, but JRS' claims are not related to the PCI program. JRS chose not to plead a claim for breach of the PCI agreement or any related tort claims, and the claims in its complaint are based on alleged defamation or interference with contractual relations outside of the parties' relationship under the PCI agreement. While a forum selection clause may require parties to litigate contract and tort claims in a particular forum, Panduit has not shown that the forum selection clause is applicable to the specific tort claims raised in plaintiff's complaint.

Panduit's final argument for enforcement of the forum selection clause is that JRS' claims for tortious interference with contract "are tantamount to an admission that the outcome of the case is dependent upon the parties' dispute over the terms of the [PCI agreement]," because JRS' claims

can not be resolved without a judicial determination that Panduit wrongfully terminated JRS' PCI certification. Dkt. # 15, at 5. Panduit argues that a claim for tortious interference with contract has three elements under Oklahoma law: (1) that the party "had a business or contractual right with which there was interference"; (2) "[t]hat the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable"; and (3) "[t]hat damage was proximately sustained as a result of the complained-of interference." Mac Adjustment, Inc. v. Prop. Loss Res. Bureau, 595 P.2d 427, 428 (Okla. 1979). By arguing that Panduit's conduct was wrongful, Panduit asserts that JRS' claims are based on allegations that Panduit wrongfully terminated JRS from the PCI program. However, a plain reading of the complaint shows that JRS' tortious interference with contract claims are based on Panduit's alleged statements to Flintco and the Cherokee Nation that JRS "engaged in unethical business practices and exhibited poor workmanship." Dkt. # 2, Ex. 1, at 3. Panduit's decision to terminate JRS' PCI certification is, at best, a background or non-essential part of JRS' claims and this does not show that JRS' claims arise under or relate to the PCI agreement.

In the alternative, Panduit requests an order requiring JRS to provide a more definite statement of its defamation claim, because the complaint does not identify the alleged defamatory statements with enough specificity. Under Rule 12(e), the Court may require a party to cure defects in a vague or ambiguous pleading so as to allow the opposing party to frame a responsive pleading. Rule 12(e) reads, in pertinent part: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). In this case, JRS' complaint cites e-mails sent by Panduit to the Choctaw Nation and

Flintco and states that the e-mails were sent between May 12 and May 19, 2008. JRS also alleges that Panduit contacted the Cherokee Nation during the same time period. Under Fed. R. Civ. P. 8, these allegations are adequate to put Panduit on notice of the factual basis for JRS' defamation claim and a more definite statement is unnecessary. Initial disclosures should provide the relevant documents.

**IT IS THEREFORE ORDERED** that Panduit's Motion to Dismiss for Improper Venue, or in the Alternative, Motion for More Definite Statement (Dkt. ## 14, 15) is **denied**.

**DATED** this 6th day of January, 2009.

*[Signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT